1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TALMADGE BATES,                        No.  2:19-cv-2182 AC P

12                 Petitioner,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   ROBERT NEUSCHMID, Warden,

15                 Respondent.

16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging

19   petitioner's 2017 conviction for battery on a spouse and criminal threats.  Respondent has

20   answered.  ECF No. 14.  Petitioner was granted an extension of time to file a traverse, ECF No.

21   19, but he never did so.

22                              BACKGROUND

23   I.      Proceedings in the Trial Court

24        A.  Preliminary Proceedings

25        Petitioner was charged in Solano County with assault with a deadly weapon (count 1),

26   injury to a spouse (count 2) and criminal threats (count 3), with enhancements for personal use of

27   a deadly weapon and a prior strike.  He pled not guilty, and the case went to trial.

28   ////

                                          1

1        B.   The Evidence Presented at Trial

2        The jury was presented with evidence of the following facts.[1]   Petitioner and the victim

3    had been married for 15 years at the time of the offenses.   The victim described a years-long

4    history of verbal and physical abuse that started when she was pregnant with their first child.   She

5    testified that she never reported the abuse until the most recent incident, because "I think that

6    somehow I thought that it ain't that bad.   Even though it was getting bad.   Like you talk yourself

7    into not calling the police. You talk yourself into 'Well, maybe if I give him a chance. Maybe if I,

8    you know, do something, that I don't say these words or act a certain way he won't—I won't

9    make him mad to be enraged enough to hit me.'"   In addition, the victim was reluctant to deprive

10   her daughters of their relationship with their father. "[T]hey do have a good relationship other

11   than him, you know, going off on me."

12       On the morning of December 18, 2016, petitioner and the victim woke up in "a bad

13   space."   The victim was disappointed in herself for using drugs with petitioner the night before

14   and told him she was no longer going to give him money for drugs.   Angered, petitioner yelled

15   and then swung at her.   The victim ducked the blow, but petitioner's fingernail scratched her

16   forehead, causing some bleeding.   The victim was concerned that petitioner was "enraged enough

17   to really, like, knock me out or [¶] . . . [¶] do some bodily harm."

18       The victim went into the bathroom and started to cry.   Petitioner yelled and screamed at

19   her from the living room.   Eventually the victim joined him there, said their marriage was over

20   and told him to leave.   Petitioner became angrier and was "looking at me crazy, going off."   As

21   the victim sat on the couch crying, petitioner got a paring knife from the kitchen.   He rushed at

22   her, grabbed her collar and pushed her into the couch.   Holding the point of the knife to the

23   victim's face, he said "Don't you know I will gut you?"   Their fights had never before escalated

24   to this point.   The victim feared for her life, so she nervously laughed to defuse the situation.   She

25   told petitioner, "Man, you know you ain't about to do that.   Put that knife down."   Petitioner

26   looked stunned, "kind of snapped out of it," and returned the knife to the kitchen.

27
─────────────
28   [1]  This summary is adapted from the opinion of the California Court of Appeal.  ECF No. 15-6.
     The undersigned finds it to be accurate.

                                              2

After that, hours went by and the two did not speak to each other.  Eventually petitioner said, "Well, I'm gonna end up having to get away from you because you're going to make me do something to you."  The victim did not call the police because they did not do anything to protect her when she called them once before.  She also wanted petitioner to repay money he owed her from a check he was expecting that week.  But after he got his check "he took off with the money."

On December 23, 2016, the victim was in San Francisco when an acquaintance told her that petitioner was around the corner from the Tenderloin police station, using drugs and saying bad things about her.  Fearing he might hurt her, the victim went to the police station and reported the December 18 assault to Officer Alexander Anton-Buzzard.  The officer described her as "frightened and panicked.  She was actively crying.  Her eyes were bloodshot, and she appeared terrified."  Petitioner was soon located and arrested.  When the victim learned he had been detained "[s]he was very relieved.  She put her hands in her face.  She was crying.  She was thanking [the officer] personally."

But she did not end her relationship with petitioner.  She knew that when he got out of jail "he was going to come to my house, stalk me, act a fool.  And I didn't want him to be homeless" and "cause problems at the house."  When petitioner was released, she took him to a hotel where she was staying and shared cocaine with him.  Over the following two months she continued to supply and occasionally use drugs with petitioner to keep him from getting angry.

Petitioner called no witnesses at trial and focused his defense on discrediting the victim's testimony.

C.  Outcome

The jury was unable to reach a verdict on assault with a deadly weapon and the weapon use enhancement.  Both were dismissed on the state's motion.  The jury acquitted petitioner on count 2, injury to a spouse, but convicted him of the lesser included offense of battery on a spouse.  The jury also convicted petitioner on count 3, criminal threats, and the trial court found the prior strike allegation true.

////

3

1    II.      Post-Conviction Proceedings

2         Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

3    conviction on April 18, 2019.  ECF No. 15-6.  The California Supreme Court denied review on

4    June 26, 2019.  ECF No. 15-8.

5         This federal petition followed.

6              STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

7         28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

8    1996 ("AEDPA"), provides in relevant part as follows:

9              (d) An application for a writ of habeas corpus on behalf of a person
               in custody pursuant to the judgment of a state court shall not be
10             granted with respect to any claim that was adjudicated on the merits
               in State court proceedings unless the adjudication of the claim –
11
               (1) resulted in a decision that was contrary to, or involved an
12             unreasonable application of, clearly established Federal law, as
               determined by the Supreme Court of the United States; or
13
               (2) resulted in a decision that was based on an unreasonable
14             determination of the facts in light of the evidence presented in the
               State court proceeding.
15

16        The statute applies whenever the state court has denied a federal claim on its merits,

17   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

18   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

19   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

20   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

21   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

22   may be overcome when there is reason to think some other explanation for the state court's

23   decision is more likely."  Id. at 99-100.

24        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

25   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

26   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

27   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

28   ////

4

1  issue is clearly established by Supreme Court precedent."  <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64
2  (2013).

3       A state court decision is "contrary to" clearly established federal law if the decision
4  "contradicts the governing law set forth in [the Supreme Court's] cases."  <u>Williams v. Taylor</u>, 529
5  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state
6  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to
7  the facts of the particular state prisoner's case."  <u>Id.</u> at 407-08.  It is not enough that the state court
8  was incorrect in the view of the federal habeas court; the state court decision must be objectively
9  unreasonable.  <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003).

10       Review under § 2254(d) is limited to the record that was before the state court.  <u>Cullen v.</u>
11  <u>Pinholster</u>, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court
12  reasonably applied clearly established federal law to the facts before it.  <u>Id.</u> at 181-182.  In other
13  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  <u>Id.</u> at 182.
14  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is
15  confined to "the state court's actual reasoning" and "actual analysis."  <u>Frantz v. Hazey</u>, 533 F.3d
16  724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims
17  summarily, without a reasoned opinion.  In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a
18  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court
19  must determine what arguments or theories may have supported the state court's decision, and
20  subject those arguments or theories to § 2254(d) scrutiny.  <u>Richter</u>, 562 U.S. at 102.

21  DISCUSSION
22  I.    <u>Claim One: Prosecutorial Misconduct in Closing Argument Regarding Presumption of</u>
23         <u>Innocence, and Ineffective Assistance of Counsel in Failing to Object</u>
24         A.  <u>Petitioner's Allegations and Pertinent State Court Record</u>
25       Petitioner alleges that the prosecutor committed misconduct by arguing that the
26  presumption of innocence was "over," and that petitioner was no longer entitled to the benefit of
27  the doubt.  The relevant portions of the trial record are as follows.
28  ////

5

1       During voir dire, the trial court discussed the presumption of innocence with prospective

2   jurors:

3              Does everybody understand that we are all presumed innocent? And
               the State, if they want to convict us, have to prove it up. You don't
4              ever have to prove anything. As a defendant you don't have to prove
               anything. It is the State's job to prove whether you are guilty or not.
5              Is everybody okay with that idea?

6              So, again, Mr. Bates enjoys the presumption of innocence. You are
               all ok with that general idea? So we're not voting now. But right now
7              he is cloaked in the presumption of innocence. He is not guilty. And
               it is on [the prosecutor] to bring it, as they say, and provide you with
8              some evidence as to whether it is proven beyond a reasonable doubt.

9              … [W]hen you decide whether the People have proved their case
               beyond a reasonable doubt, you must impartially compare and
10             consider all the evidence that you received throughout the entire trial.
               Unless the evidence proves defendant guilty beyond a reasonable
11             doubt, he is entitled to an acquittal, and you must find him not guilty.

12             … We start with the presumption of not guilty.  And then the People,
               because they have the burden of proof… they go first….  And then
13             at the end of the People's case… [t]he defense doesn't have to prove
               anything. They don't have to put on any evidence. They can just
14             simply argue to you and say, "They didn't prove it to you. Don't
               believe [the victim.]"  Right? "Don't believe the People's evidence."
15             That's what they can do. It is up to the People.

16             So you may—that innocence train may have left the station. But
               there's only two choices when you are done. It is either guilty or not
17             guilty. Not maybe. That's not one of the choices you get. So unless
               the People prove it beyond a reasonable doubt, he is entitled to a not
18             guilty verdict.

19  Aug. RT at 9-10 (ECF No. 15-3 at 10-11).

20      In closing, the defense argued:

21             So, again, the benefit of the doubt goes to [petitioner]. They did not
               meet their burden. [The victim] is biased. She's got credibility
22             problems. That's not enough to make it beyond this burden.

23             This is a high standard. . . . This is beyond a reasonable doubt. And
               because of those problems with this case, I am asking you to come
24             back with a not guilty verdict on all counts.

25             They did not meet their burden. They did not prove essential
               elements. The benefit of the doubt goes to Mr. Bates.
26

27  4 RT 200 (ECF No. 15-2 at 201).

28

                                        6

1    In rebuttal, the prosecutor argued:

2        I just want to start off by saying the benefit of a doubt is not a legal
         standard. It's not a standard at all. What we talked about is the
3        presumption of innocence that starts at the beginning of this trial.
         And as the Judge told you, it can leave that station at any point in
4        time.

5        When you saw [the victim] and saw how small she was, the train
         could have started leaving. When you heard [the victim] start to
6        testify, the train could have started leaving. When you heard [the
         victim] testify to the additional abuse that she had sustained over the
7        last 15 years, the train could have left the station.

8        So, no, there's no benefit of the doubt at this point. You have heard
         all of the evidence. And the standard now is beyond a reasonable
9        doubt. And I submit to you all that I have proven that.

10   4 RT 201 (ECF No. 15-2 at 202).

11       Defense counsel did not object to the prosecutor's argument, and petitioner alleges that

12   this constituted ineffective assistance of counsel.

13           B.  The Clearly Established Federal Law

14               1.  Prosecutorial misconduct

15       In reviewing a prosecutorial misconduct claim, "[t]he relevant question is whether the

16   prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a

17   denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v.

18   DeChristoforo, 416 U.S. 637 (1974)).  "To constitute a due process violation, the prosecutorial

19   misconduct must be of sufficient significance to result in the denial of the defendant's right to a

20   fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quotations omitted) (citing United States v.

21   Bagley, 473 U.S. 667, 676 (1985)).  "[T]he touchstone of due process analysis in cases of alleged

22   prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith

23   v. Phillips, 455 U.S. 209, 219 (1982).  "[I]t is not enough that the prosecutor's remarks were

24   undesirable or even universally condemned." Darden, 477 U.S. at 181 (quotations and citation

25   omitted).

26               2.  Ineffective Assistance of Counsel

27       To establish a constitutional violation based on ineffective assistance of counsel, a

28   petitioner must show (1) that counsel's representation fell below an objective standard of

1    reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

2    Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

3    adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

4    errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

5    address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

6    prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

7    sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

8              C.  The State Court's Ruling

9         This claim was presented on direct appeal.  Because the California Supreme Court denied

10   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

11   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

12   501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

13        The appellate court ruled as follows:

14             Bates contends the prosecutor's rebuttal comments about the
               presumption of innocence "train" having left the station and "no
15             benefit of the doubt at this point" were prejudicial misconduct. "But
               a claim of prosecutorial misconduct is reviewable only if the
16             defendant makes a timely objection at trial and requests the trial court
               to admonish the jury to disregard the impropriety" or an admonition
17             would not have cured the harm. (*People v. Cowan* (2017) 8
               Cal.App.5th 1152, 1161.) Bates neither objected nor requested an
18             admonition and, even were we to assume the comment was improper,
               there is no reason to suppose an admonition by the trial court would
19             not have cured it. (*Ibid.*; *see People v. Gionis* (1995) 9 Cal.4th 1196,
               1215.) Furthermore, the record discloses no grounds for applying any
20             exception to the general rule requiring both an objection and a
               request for a curative instruction. (*See, e.g., People v. Frye* (1998) 18
21             Cal.4th 894, 970 (*Frye*), disapproved on another point in *People v.
               Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Accordingly, this alleged
22             claim of misconduct is forfeited and may not be raised in this appeal.

23             Anticipating forfeiture, Bates argues his lawyer's failure to object to
               the challenged argument was ineffective assistance of counsel. Not
24             so. To establish constitutionally defective assistance of counsel a
               defendant must show trial counsel's performance fell below an
25             objective standard of reasonableness and that the deficient
               performance was prejudicial. "Prejudice generally requires an
26             affirmative showing that, absent counsel's errors, there is a
               reasonable probability of a more favorable outcome. [Citation.] A
27             'reasonable probability' is not a showing that 'counsel's conduct
               more likely than not altered the outcome in the case,' but simply 'a
28             probability sufficient to undermine confidence in the outcome.'" (*In

                                         8

*re Cordero* (1988) 46 Cal.3d 161, 180, 249 Cal. Rptr. 342, 756 P.2d 1370; *Strickland v. Washington* (1984) 466 U.S. 668, 693-694, 104 S. Ct. 2052, 80 L. Ed. 2d 674.)

We are not persuaded the prosecutor's remarks about the presumption of innocence were misconduct (*see People v. Booker* (2011) 51 Cal.4th 141, 183-185, 119 Cal. Rptr. 3d 722, 245 P.3d 366 (Booker) [argument that the presumption of innocence was overcome by the evidence was not improper]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189-190, 207 Cal. Rptr. 431.) But even if they were, the remarks were harmless. We review a prosecutorial misconduct claim to determine whether the jury would have understood or applied the challenged comments in an improper or erroneous manner. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1403, 127 Cal. Rptr. 3d 31, 128 Cal. Rptr. 3d 31; *Frye, supra*, 18 Cal.4th at p. 970.) "In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*Frye, supra*, 18 Cal.4th at p. 970; *People v. Howard* (1992) 1 Cal.4th 1132, 1192, 5 Cal. Rptr. 2d 268, 824 P.2d 1315.) Here, the clear thrust of the challenged comments, taken as a whole, was that the jury should find the presumption of evidence had been overcome based on the state of the evidence. The jurors were properly instructed on the burden of proof and presumption of innocence. They were also instructed to follow the law as explained by the court, not the lawyers. There is no reason to believe they did not understand and follow those instructions. (*See Frye, supra*, 18 Cal.4th at p. 970; *see also People v. Sanchez* (2001) 26 Cal.4th 834, 852, 111 Cal. Rptr. 2d 129, 29 P.3d 209.)

Bates puts great weight on what he calls "obvious problems" with the victim's credibility to argue the allegedly improper argument affected the verdict. In his view, the victim's testimony was "unbelievable" and "implausible" because she waited several days to report the attack and continued to see and supply him with drugs over the following weeks. He argues, in essence, that victims of spousal abuse are inherently untrustworthy unless they immediately report the abuse and terminate their relationship with the abusing partner. His argument is premised on a long-since debunked assumption about domestic violence victims.

"'A fundamental difference between family violence and other forms of violence (such as street violence) is that family violence occurs within ongoing relationships that are expected to be protective, supportive, and nurturing. The ties between victim and victimizer often are the strongest emotional bonds, and victims frequently feel a sense of loyalty to their abusers. . . . [¶] Consequently, even a victim who reports an abusive family member to police may later protect the person by denying, minimizing, or recanting the report.' [Citations.] Thus, the prosecution of domestic violence cases presents particular difficulties. 'Unlike conventional cases . . . where prosecutors rely on the cooperation and participation of complaining witnesses to obtain convictions, in domestic violence cases prosecutors are often faced with exceptional challenges. Such challenges include victims who refuse to testify, who recant previous

statements, *or whose credibility is attacked by defense questions on why they remained in a battering relationship.*'" (*People v. Brown* (2004) 33 Cal.4th 892, 899, italics added; *see People v. Aris* (1989) 215 Cal.App.3d 1178, 1195 ["[b]attered women tend to stay in the abusive relationship for a number of reasons"]; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1087-1088.)

Bates also argues the purported misconduct was likely to have affected the verdict because this case was so close. This is so, he maintains, because the jury rejected the victim's claim that he inflicted a wound or other bodily injury and deadlocked on the knife-related charges. But the jury assesses witness credibility, not this court. The jurors' apparent rejection of part of the victim's version of events does not permit us to infer they would have disbelieved her testimony in its entirety but for the allegedly improper rebuttal. In fact, the jury's apparently discriminating and careful assessment of the victim's testimony debunks this argument. In sum, the record presents no reasonable likelihood that Bates was prejudiced by his lawyer's failure to object.

ECF No. 15-6 at 6-8.

### D. Objective Reasonableness Under § 2254(d)

The state court ruled first that petitioner's prosecutorial misconduct claim had been forfeited by failure to object, and that is a state law determination not subject to review here. See Pulley v. Harris, 465 U.S. 37, 41 (1084) (state law questions unreviewable in federal habeas).[2] Because the state court went on to address the merits of petitioner's related ineffective assistance of counsel claim, that is the ruling properly subject to review for objective reasonableness under § 2254(d). The state court applied the analysis required under Strickland, finding both (1) that the performance prong was not satisfied because the prosecutor's statement was not objectionable, and (2) that the prejudice prong was not satisfied because the prosecutor's statement had no likely effect on the verdict. Both conclusions are reasonable.

As to counsel's performance, it cannot be unreasonable to raise a meritless objection.

---

[2]  Respondent does not assert procedural default as a defense, see Coleman v. Thompson, 501 U.S. 722, 750 (1991) (federal habeas court may not consider claims denied in state court pursuant to state procedural rule), and the undersigned declines to raise the issue *sua sponte*. See Trest v. Cain, 522 U.S. 87, 89 (1997) (federal court not required to raise procedural default *sua sponte* where the state has failed to assert it).  Because an independently exhausted ineffective assistance of counsel claim would, if meritorious, excuse a default, Edwards v. Carpenter, 529 U.S. 446, 451 (2000), the undersigned turns directly to that issue.  In any event, the merits of the prosecutorial misconduct and ineffective assistance of counsel claims dovetail, as the state court's opinion demonstrates.

Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).  The state court construed the prosecutor's comments as an argument that the presumption of innocence had been overcome by the evidence, not that the presumption did not apply.  That is a perfectly fair interpretation of the challenged statement.[3]  The state court accurately cited California caselaw demonstrating that such remarks were not impermissible.  ECF No. 15-6 at 7 (citing People v. Booker, 51 Cal.4th 141, 183-185 (2011) and People v. Goldberg, 161 Cal.App.3d 170, 189-190 (1984)).  Accordingly, objection would have been futile and counsel therefore did not perform deficiently.

As to Strickland's prejudice prong, it was not objectively unreasonable for the state court to conclude that the prosecutor's remarks were harmless and so, by necessary implication, defense counsel's failure to secure an admonition cannot have affected the verdict.  The trial court correctly instructed the jury regarding the presumption of innocence and the prosecutor's burden of proof; petitioner does not contend otherwise.  A jury is presumed to follow its instructions, Weeks v. Angelone, 528 U.S. 225, 234 (2000), and the undersigned finds nothing in the record of this case which would overcome that presumption.  Petitioner points to how close the case against him was, but the fact that the jury found the prosecution had not satisfied its burden as to some counts demonstrates that jurors did not misunderstand the reasonable doubt standard or the prosecutor's burden.  See Featherstone v. Estelle, 948 F.2d 1497, 1503-1504 (9th Cir. 1991).  The state appellate court's rejection of petitioner's prejudice theory is well reasoned and rests on no objectively unreasonable application of U.S. Supreme Court precedent.  Accordingly, § 2254 bars federal habeas relief.

////

////

////

---

[3]  As the Ninth Circuit has observed, "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."  United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993).  Petitioner cites no clearly established federal law compelling a conclusion that the prosecutor's statement in this case was an "egregious" misstatement that required defense objection, and the undersigned is aware of no such precedent.

11

II.     Claim Two: Prosecutorial Misconduct in Closing Argument Regarding Petitioner's Failure to Testify, and Ineffective Assistance of Counsel in Failing to Object

A.   Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that his due process rights were violated when the prosecutor urged the jury to infer guilt from his failure to testify, in violation of Griffin v. California, 380 U.S. 609 (1965).  The claim is based on the following statement, which the prosecutor made in rebuttal argument:

> Also, no one has stood before you and said this did not happen. No one. Ladies and gentlemen of the jury, the reason is because it did happen.

4 RT 203 (ECF No. 15-2 at 204).

Defense counsel did not object to the prosecutor's argument, and petitioner alleges that this constituted ineffective assistance of counsel.

B.   The Clearly Established Federal Law

The clearly established federal law regarding prosecutorial misconduct and the ineffective assistance of counsel is set forth above regarding Claim One.

C.   The State Court's Ruling

The California Court of Appeal ruled in pertinent part as follows:

> Bates asserts the prosecutor improperly commented on his failure to testify in violation of Griffin v. California (1965) 380 U.S. 609 (Griffin), when she argued in rebuttal that "no one has stood before you and said this did not happen. No one. Ladies and gentlemen of the jury, the reason why is because it did happen." This assertion was also forfeited for appeal by Bates's failure to object and request an admonition. (People v. Medina (1995) 11 Cal.4th 694, 756-757; People v. Fierro (1991) 1 Cal.4th 173, 211.) Bates again asserts that failure was ineffective assistance of counsel, but here, too, we disagree.
>
> While the prosecution may not directly or indirectly refer to the defendant's decision not to testify on his own behalf (Griffin, supra, 380 U.S. at p. 613), the same prohibition does not extend to comments on a defendant's failure to introduce material evidence or call logical witnesses. (People v. Bradford (1997) 15 Cal.4th 1229, 1339-1340; People v. Vargas (1973) 9 Cal.3d 470, 475.) "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (People

12

*v. Bradford, supra*, at p. 1340.) Thus, in *People. v. Ratliff* (1986) 41 Cal.3d 675, 691, it was not misconduct when the prosecutor stated: " 'Now is there any evidence on the other side? Any evidence at all? None has been presented to you. Absolutely zero has been presented to you by [the defendant] and his attorney.' " Similar allegations of prosecutorial misconduct have been rejected as to arguments that " 'Ladies and gentlemen, you have now heard the entirety of the case . . . . Obviously, if there has been some or is some defense to this case, you'd either have heard it by now or for some reason nobody's talking about it' " (*People v. Johnson* (1989) 47 Cal.3d 1194, 1236, overruled on another point in *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1173-1174) and " '[p]ut yourself in the position of being a defendant and you can bet your boots that if you had anything to offer by way of evidence, by way of alibi, that you would offer it' " (*People v. Morris* (1988) 46 Cal.3d 1, 35-36, disapproved on another point in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5; *see also People v. Gonzales* (2012) 54 Cal.4th 1234, 1275 ["As for the prosecutor's reference to witnesses not called, it is neither unusual nor improper to comment on the failure to call logical witnesses].)

The prosecutor's comments here did not transgress recognized boundaries. She did not comment on Bates's decision not to testify. Her argument, rather, was that he failed to offer any witnesses to contradict the victim. Such witnesses would logically include neighbors, friends, family or coworkers who could refute the victim's testimony about the couple's history of domestic violence or her claim that Bates's blow caused a cut on her forehead. Indeed, defense counsel signaled the potential importance of such witnesses when she argued the prosecutor failed to call family, friends, coworkers or police officers to corroborate the victim's testimony. Defense counsel cannot be considered ineffective for failing to make groundless objections, so there was no ineffective assistance. (*People v. Boyette* (2002) 29 Cal.4th 381, 437, 455; *People v. Thompson* (2010) 49 Cal.4th 79, 122.) Moreover, even if the remark crossed the line of permissible argument, [fn: To be clear, it did not.] defense counsel could have reasonably made a tactical decision not to call undue attention to it with an objection. (*See People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.)

ECF No. 15-6 at 8-10.

D. Objective Reasonableness Under § 2254(d)

The California Court of Appeal reasonably construed the prosecutor's statement as a comment on the general absence of defense evidence, and not a comment specifically directed at petitioner's failure to testify. The prosecutor did not comment directly on petitioner's silence as *Griffin* forbids. See *Griffin*, 380 U.S. at 615. Neither was the statement "of such a character that the jury would naturally and *necessarily* take it to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987) (emphasis added). The California caselaw on

1    which the appellate court relied in evaluating the remark is fully consistent with federal law.  The

2    Ninth Circuit, for example, has clearly distinguished permissible "comments about the lack of

3    explanation provided by the *defense*" from impermissible "comments about the lack of

4    explanation furnished by the *defendant*."  United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir.

5    1994).  It was not objectively unreasonable for the state court to find that the comment here fell

6    into the former category.

7          III.    Claim Three: Cumulative Error

8          Petitioner alleges in Claim Three that even if neither of the prosecutor's offensive

9    statements violated due process individually, they do so when considered in their cumulative

10   effect.  This issue was presented to the California Court of Appeal but was not addressed in the

11   court's opinion.  See ECF No. 1 at 41 (Appellant's Opening Brief); ECF No. 15-6 (opinion of

12   California Court of Appeal).  Summary denial cannot have involved an unreasonable

13   determination of facts or an unreasonable application of clearly established federal law.

14         Although multiple errors that are harmless individually may be so prejudicial when

15   considered together that they rise to the level of a due process violation, see Chambers v.

16   Mississippi, 410 U.S. 284, 290 n. 3 (1973), the statements challenged here cannot reasonably be

17   construed as errors at all.  In light of the jury instructions and arguments considered as a whole,

18   there is no reasonable possibility that the jury would have understood the prosecutor to be

19   undermining the presumption of innocence or urging an adverse inference from petitioner's

20   failure to testify.  Accordingly, there is no error to cumulate.  And because the record does not

21   support a conclusion that either of the challenged statements rendered the trial unfair or affected

22   the verdict in any way, their combined effect still falls far short of a due process violation.

23   Accordingly, the state court's summary rejection of a cumulative error theory was entirely

24   reasonable.

25                                    CONCLUSION

26         For all the reasons explained above, IT IS HEREBY ORDERED that the Clerk of Court

27   randomly assign a district judge to this action.

28   ////

                                    14

1    IT IS FURTHER RECOMMENDED that the petition for writ of habeas corpus be denied

2 for the reasons explained above.

3    These findings and recommendations are submitted to the United States District Judge

4 assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

5 after being served with these findings and recommendations, any party may file written

6 objections with the court and serve a copy on all parties.  Such a document should be captioned

7 "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

8 he shall also address whether a certificate of appealability should issue and, if so, why and as to

9 which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

10 within fourteen days after service of the objections.  The parties are advised that failure to file

11 objections within the specified time may waive the right to appeal the District Court's order.

12 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13 DATED: April 30, 2024

14

15 ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28